## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JERAD KEITH GRAVITT,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **Case No. CIV-19-551-R** |
| ) | |
| ) | |
| **CARL BEAR, Warden,** ) | |
| **Joseph Harp Correctional Center,** ) | |
| ) | |
| **Respondent.** ) | |

## <u>ORDER</u>

Petitioner Jared Gravitt, a state prisoner, filed this action seeking relief pursuant to 28 U.S.C. § 2254. Doc. No. 1. In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), the matter was referred to United States Magistrate Judge Shon T. Erwin for preliminary review. On November 26, 2019, Judge Erwin issued his Report and Recommendation. Doc. No. 20. The matter is currently before the Court on Mr. Gravitt's timely objection, Doc. No. 29. Respondent Warden Bear has responded in opposition to the objection, Doc. No. 30, and Mr. Gravitt has replied, Doc. No. 44. Cognizant of its obligation to undertake a *de novo* review of those portions of the Report and Recommendation to which Mr. Gravitt makes specific objection, and having conducted such review, the Court finds as follows.

### I.    Background[1]

On May 4, 2014, at approximately 2:00 a.m., Mr. Gravitt and his girlfriend, Brittany Tabor, walked into a Walgreens store in south Oklahoma City, Oklahoma. The two loitered

---

[1] The facts are not disputed by the parties and are taken from Mr. Gravitt's petition. *See* Doc. No. 1, pp. 11–15.

for some time, and a Walgreens employee, Rhonda Webber, suspected the two were planning to steal items from the store. Mr. Gravitt disappeared to the restroom, and after a ten-minute absence Ms. Webber asked the pharmacist, Troy Davis, to check on him. As Mr. Davis approached the bathroom, Mr. Gravitt exited and re-joined Ms. Tabor. Mr. Davis, believing the two were intoxicated and concerned they would drive, approached the pair and asked if he could get them a cab. They declined. Ms. Webber then instructed Mr. Davis to call the police.

Shortly thereafter, Mr. Gravitt and Ms. Tabor left the store. Ms. Webber followed the couple outside of the store and requested they return the items she suspected they had stolen. Mr. Gravitt walked towards Ms. Webber, handed her the items and a twenty-dollar bill and said, "just take it." She told him to keep the money, but to get off the property, and not to return. Mr. Gravitt responded by running up behind Ms. Webber with his knife in hand, kicking over a trash can in her path, cursing, and yelling that he would give her "a reason to call the cops." In kicking down the trash can Mr. Gravitt lost his footing and hit Ms. Webber in the arm but failed to stab her with the knife he was wielding. After the altercation, the couple ran from the store. Mr. Davis called 911 upon hearing, incorrectly, that Ms. Webber had been stabbed.

When the police arrived, Ms. Webber reported that the couple had run off. The reporting officer, Officer Nelson, reported the information via radio and set out in search of the couple. After hearing the report, Officer Duncan, Nelson's partner, made contact with the two subjects approximately three blocks away. After spotting Officer Duncan, Ms. Tabor dropped her belongings and placed her hands in the air. Mr. Gravitt, however,

2

walked away from Officer Duncan, despite Duncan's commands that Mr. Gravitt stop moving. After he gained separation from Officer Duncan, Mr. Gravitt looked back over his shoulder, pulled out a gun, and shot at Officer Duncan three times. No bullets hit Officer Duncan, though one bullet flew by his head and hit the windshield of his patrol car. Mr. Gravitt took off running across the street, and despite an extensive search of the perimeter, after two hours the officers discontinued their search.

Mr. Gravitt was arrested at approximately 5:00 a.m. by Master Sergeant Brian Cook who had been involved in the search. Officer Cook had responded to a burglary call at 8401 South Indiana Avenue and found Mr. Gravitt sitting on a storage bin in the back yard of the home. Petitioner was only partially compliant with Officer Cook's commands, and ultimately Officer Cook utilized his canine unit to incapacitate Mr. Gravitt, who he believed was the suspect in the shooting involving Officer Duncan, and therefore might be armed. When handcuffed and searched, Mr. Gravitt did not have the gun in his possession; it was later recovered by police from a bush in the corner of the yard.

An Oklahoma County jury convicted Mr. Gravitt of assault with a dangerous weapon, shooting with intent to kill, and possession of a firearm after a former felony conviction. Doc. No. 7-1, p. 1. At trial Mr. Gravitt and Ms. Tabor testified that they had been doing drugs that night, and that their memories of the events were largely fuzzy. *Id.* at 14. Mr. Gravitt did not deny his involvement in the activities but asserted throughout trial that he could not be found guilty of assault and battery with a dangerous weapon or shooting with intent to kill because of his voluntary intoxication. As a result of his conviction Mr. Gravitt was sentenced to a term of 45 years imprisonment. *Id.* He filed a

3

direct appeal in the Oklahoma Court of Criminal Appeals (OCCA), which affirmed his conviction. Doc. No. 7-2. Subsequently Mr. Gravitt filed an application for post-conviction relief in Oklahoma County District Court. Doc. No. 7-5. The district court conducted an evidentiary hearing before denying relief. Doc. No. 7-7. The OCCA affirmed the district court's denial, Doc. Nos. 7-8, 7-9, 7-10.

On June 18, 2019, Mr. Gravitt filed the petition now before the Court, seeking habeas relief pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), specifically, 28 U.S.C. § 2254. Doc. No. 1. In his petition, Mr. Gravitt presents three grounds for relief. First, Mr. Gravitt contends that his Sixth and Fourteenth Amendment rights were violated because the trial court refused to instruct the jury on the defense of voluntary intoxication. *Id.* at 11–22. Second, Mr. Gravitt alleges that he received ineffective assistance of appellate counsel because his appellate counsel failed to argue that his trial counsel was ineffective for failing to hire an expert witness to testify about his level of intoxication. *Id.* at 22–37. Finally, Mr. Gravitt asserts that the above violations result in cumulative error. *Id.* at 37–38.

## II.     The Report and Recommendation

Judge Erwin recommends the Court deny Mr. Gravitt's petition for habeas relief. Doc. No. 20. He begins by recommending the Court deny Mr. Gravitt's first ground for relief because the trial judge acted appropriately in his instruction of the jury, the OCCA applied the correct standard in affirming the trial court's decision to not give the requested voluntary-intoxication instruction, and the absence of the aforementioned instruction did not render Mr. Gravitt's trial fundamentally unfair. *Id.* at 1–14. Judge Erwin further advises

the Court to rely on *Thornburg v. Mullin*, 422 F.3d 1113, 1125–26 (10th Cir. 2005) where the Tenth Circuit found that a trial court's failure to include a jury instruction on voluntary intoxication did not render the trial fundamentally unfair. Doc. No. 20, pp. 14–16.

Next, Judge Erwin recommends the Court deny Mr. Gravitt's second ground for relief because, in accordance with *Strickland v. Washington*, 466 U.S. 668 (1984), Mr. Gravitt's trial counsel employed reasonable trial strategy in choosing not to retain an expert to testify regarding Mr. Gravitt's level of intoxication. *Id.* at 24–25. Thus, Mr. Gravitt's appellate counsel could not have been ineffective in failing to argue the ineffective assistance of trial counsel. *Id.* at 25–26.

Finally, Judge Erwin recommends the Court deny Mr. Gravitt's third and final ground for relief because there were no constitutional errors to cumulate. *Id.* at 26–27.

### III.   Standard of Review

The AEDPA "circumscribes our review of federal habeas claims that were adjudicated on the merits in state-court proceedings." *Grant v. Royal*, 886 F.3d 874, 888 (10th Cir. 2018) (quoting *Hooks v. Workman* ("*Victor Hooks II*"), 689 F.3d 1148, 1163 (10th Cir. 2012)). "Under AEDPA, a petitioner is entitled to federal habeas relief on a claim only if he can establish that the state court's adjudication of the claim on the merits (1) 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law'; or (2) 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Littlejohn v. Trammell* ("*Littlejohn I*"), 704 F.3d 817, 824 (10th Cir. 2013) (quoting 28 U.S.C. § 2254(d)(1), (2)).

The AEDPA standard is "highly deferential [to] state-court rulings [and] demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24, (2002) (per curiam) (citation omitted) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997) ). "A habeas petitioner meets this demanding standard only when he shows that the state court's decision was 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Grant*, 886 F.3d at 888 (quoting *Dunn v. Madison*, —— U.S. ——, 138 S. Ct. 9, 11 (2017) (per curiam)). This "standard is difficult to meet . . . ." *Harrington v. Richter*, 562 U.S. 86, 103, (2011) (citations omitted). "It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedent[]. It goes no further." *Id.*

## IV.    Petitioner's Objections

Mr. Gravitt submits several objections to Judge Erwin's Report and Recommendation. *See* Doc. No. 29. With the AEDPA standard in mind, the Court addresses the objections relevant to each of Mr. Gravitt's three grounds for relief.

### A. Ground One

Mr. Gravitt argues in his first ground for relief, as he did on direct appeal, that the trial court erred in refusing to instruct the jury on voluntary intoxication, Doc. No. 1, pp. 11–22, which can negate the intent necessary for a specific-intent crime. *Fitzgerald v. State*, 972 P.2d 1157, 1174 (Okla. Crim. App. 1998). In his petition and his objection, Mr. Gravitt first argues that the OCCA's decision was based on an unreasonable determination of the

facts and an unreasonable application of clearly established federal law. Doc. No. 1, pp. 15–18; Doc. No. 29, pp. 1–14.

The OCCA addressed this issue on direct appeal and concluded that "[t]he trial court did not abuse its discretion here, as the evidence showed that Appellant 'was not in the advanced state of intoxication he attempt[ed] to assert' at trial." Doc. No. 7-1, p. 3 (quoting *Turrentine v. State*, 1998 OK CR 33, ¶ 31 (1998)). Fundamentally, and as addressed by Judge Erwin, the issue raised by Mr. Gravitt is whether the trial court's refusal to instruct the jury on voluntary intoxication violated his constitutional rights. Judge Erwin concluded it did not.

"A habeas petitioner who seeks to overturn his conviction based on a claim of error in the jury instructions faces a significant burden." *Ellis v. Hargett*, 302 F.3d 1182, 1186 (10th Cir. 2002). Because there is no constitutional right to intoxication instructions, Mr. Gravitt "must show that, in the context of the entire trial, the error in the instruction was so fundamentally unfair as to deny [him] due process." *Tiger v. Workman*, 445 F.3d 1265, 1267 (10th Cir. 2006). The Supreme Court has acknowledged that where, as here, a petitioner's complaint relates to "[a]n omission, or an incomplete instruction, [it] is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

In Oklahoma, a jury may consider voluntary intoxication as a defense when there is sufficient evidence that the defendant was so "utterly intoxicated, that his mental powers [were] overcome, rendering it impossible for [the] defendant to form the specific criminal intent . . . ." *Spears v. Mullin*, 343 F.3d 1215, 1244 (10th Cir. 2003). However, a voluntary

intoxication instruction is not warranted when a defendant demonstrates use of his faculties. *See, e.g., Jackson v. Mullin*, 46 F. App'x 605, 611 (10th Cir. 2002) (noting the OCCA's finding that defendant was not entitled to voluntary intoxication instruction where evidence showed he "had control of his mental faculties [and] had coherent decision-making ability"); *see also Grissom v. Duckworth*, No. CIV-11-1456-R, 2016 WL 4146157, at *23 (W.D. Okla. Aug. 3, 2016) (unpublished) (holding that under Oklahoma law, "voluntary intoxication instructions are not warranted where the defendant's actions show use of his faculties").

In his objection, Mr. Gravitt mischaracterizes Judge Erwin's conclusion by asserting that he "determined the evidence was insufficient for the instruction on voluntary intoxication." Doc. No. 29, p. 9. The Report and Recommendation utilizes the correct standard under the AEDPA, and it is not *de novo* review. Although Mr. Gravitt contends the OCCA's direct appeal decision was based on erroneous factual findings, *id.* at 10, the issue was one of law, not fact. *See Grissom v. Carpenter*, 902 F.3d 1265, 1291 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 2030 (2019).[2] "[B]y stating that the evidence presented at trial did not create a prima facie case that [Gravitt] was so intoxicated that he could not form the specific intent to commit the[] crimes, the OCCA was conveying its legal conclusion . . . ." *Id.* at 1291. Additionally, Mr. Gravitt relies largely on his mental status

---

[2] In *Grissom* the trial court gave voluntary intoxication instructions, but they were "confusing and incomplete." *Grissom*, 902 F.3d at 1291. The OCCA concluded the Mr. Grissom had not been entitled to such instructions, and therefore the instructions did not render the trial fundamentally unfair. *Id.* at 1294. The court further noted, as highlighted above, that the sufficiency of the evidence issue is "an issue of law rather than fact . . . ." *Id.*at 1291.

six hours after the first incident as support for his intoxication defense. While probative, and argued to the jury, his mental acuity at that time was not dispositive.

Other evidence at trial tended to show that while Mr. Gravitt ingested heroin and Xanax near the time he attacked Ms. Webber with the knife and shot at Officer Duncan,[3] and appeared intoxicated to various witnesses, he was not so "utterly intoxicated" that his mental powers were overcome. For example, Mr. Gravitt was aware enough to attempt to pay for the items he and Ms. Tabor had stolen from Walgreens when confronted outside and to attempt to retaliate against Ms. Webber by running at her with his knife, and kicking a trash can to obstruct her path, shouting, "I'll give you a reason to call the cops . . . ." Doc. No. 7-11, pp. 12–13. The evidence of Mr. Gravitt's ability to think concretely was also not limited to the altercation at Walgreens. Officer Duncan—the officer Mr. Gravitt shot at— testified that while Mr. Gravitt's eyes looked crazed, his actions seemed deliberate. *Id.* at 54–56. After he shot at Officer Duncan, Mr. Gravitt had the wherewithal to run and evade capture for more than two hours, attempting to enter a home to further avoid detection. *See id.* at 61:22–67:13. Moreover, when Officer Cooke confronted and ultimately arrested Mr. Gravitt in the back yard of the home at 8401 South Indiana Avenue, Mr. Gravitt no longer had the gun he had fired. Rather, the gun was found in a set of bushes nearby, *id.* at 77:21– 22, indicating Mr. Gravitt may have had the mental capacity to attempt to dispose of evidence of one of his crimes. Finally, during transport from the hospital to the police station, Mr. Gravitt asked whether he had "hit him" which Officer Smith, the transport

---

[3] Petitioner's testimony regarding the timing of his heroin use was unclear.

officer, understood to mean whether any of Mr. Gravitt's shots had hit Officer Duncan. Doc. No. 7-11, pp. 97–99.

Although the police interview—conducted at 8:30 a.m., more than six hours after the initial assault and battery, and nearly that long after Mr. Gravitt fired shots at Officer Duncan—shows Mr. Gravitt in a poor mental state, *see* State's Exh. 58,[4] the video is not evidence of his mental acuity at the time of the crimes. As emphasized above, most of the State's witnesses testified that despite seeming impaired on some level, Mr. Gravitt had the use of his faculties shortly before, during, and just after the crimes. *See, e.g.*, Doc. No. 7-11, pp. 21, 23–24, 29–32, 51–52, 54–56, 79, 84–89. This information supports the trial court's decision not to instruct on voluntary intoxication. It demonstrates that the trial court's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Grant*, 886 F.3d at 888 (internal quotation marks omitted). Furthermore, the absence of the instruction did not render Mr. Gravitt's trial fundamentally unfair.

For the later conclusion, Judge Erwin relies on *Thornburg v. Mullin*, 422 F.3d 1113, 1125–26 (10th Cir. 2005) in the Report and Recommendation. Mr. Gravitt contends *Thornburg* is distinguishable on its facts but also supportive of his position, because in *Thornburg* the Court gave a "malice aforethought" instruction that clarified the applicability of the voluntary intoxication defense.

---

[4] This exhibit is not filed in the Court's docket on the CM/ECF system but can be found in the state court records.

In *Thornburg*, the petitioner was charged in state court with murder. *Id.* At trial, he asserted an alibi defense, in addition to a voluntary intoxication defense. *Id.* The trial court did not instruct the jury on the defense of voluntary intoxication. *Id.* In his habeas petition, the petitioner argued that evidence at trial clearly indicated that he was intoxicated at the time of the murders and therefore he was entitled to a jury instruction on voluntary intoxication and that the absence of the instruction violated his constitutional rights. *Id.* The Tenth Circuit rejected this argument, holding that the lack of such an instruction "did not render [petitioner's] trial fundamentally unfair." *Id.* at 1127. "The jury was not prohibited from evaluating [petitioner's] intent in light of his intoxication. The jury could have heard evidence of intoxication, decided [the petitioner] lacked the requisite intent, and acquitted him." *Id.*

So too here. Mr. Gravitt was convicted of assault with a dangerous weapon—which required that the jury find he acted "with intent to do bodily harm", Doc. No. 7-12 at 131, and of shooting with intent to kill—which required that the jury find he acted "with intent to kill any person", *id.* at 133. In failing to instruct the jury on the defense of voluntary intoxication, the trial court did not prohibit the jury from "evaluating [Mr. Gravitt's] intent in light of his intoxication." *Thornburg*, 422 F.3d at 1126. In fact, the jury heard evidence of Mr. Gravitt's intoxication and arguments in support of the defense throughout the trial. For example, Mr. Gravitt's defense counsel, Bill Foster, argued in his opening statement to the jury that on May 4, 2014 "Mr. Gravitt ingested a large amount of heroin and Xanax, which created a blackout situation for Mr. Gravitt." Jury Trial Transcript, Vol. II, p. 32:1–

11

3.[5] And that because of his intoxication, Mr. Gravitt "did not have any intent and . . . no recollection of what he was doing" that night. *Id.* at 32:17–18. In closing, Mr. Foster again highlighted the "excessive amount of heroin and Xanax" taken by Mr. Gravitt during the night at issue and argued that "[h]is mind was not his own" and that he had "no intent from one moment to the next." Jury Trial Transcript, Vol. IV, p. 19:10–22. Mr. Foster pointed to the trial testimony of Mr. Davis, the pharmacist at Walgreens, who was concerned about Mr. Gravitt's level of intoxication, *id.* at 20:7–12, and to Officer Duncan, who testified that Mr. Gravitt had a crazed look in his eyes, *id.* at 24:2–3. Additionally, he highlighted the facts of the evening that he believed demonstrated Mr. Gravitt's lack of mental acuity, *id.* at 20–25. Mr. Foster even concluded his argument by telling the jury, "[y]ou have to find intent beyond a reasonable doubt. Here, Jerad [Gravitt] had none." *Id.* at 25:24–25. As in *Thornburg*, here, "[a] voluntary-intoxication instruction might have helped [Mr. Gravitt], but it was by no means essential" to the fundamental fairness of his trial. *See id*.[6]

Mr. Gravitt contends, however, that the equity of the OCCA's decision must be considered in light of the trial court's findings in post-conviction proceedings. Doc. No. 29, pp. 8–9. He argues that it is inconsistent, and thus proof of reversible error, that the trial court refused to instruct the jury on voluntary intoxication at trial, but in a post-conviction hearing, admitted there was a reasonable basis for Mr. Foster to expect the court to instruct

---

[5] This transcript, and others cited herein, are not filed in the Court's docket on the CM/ECF system but can be found in the state court records.

[6] Mr. Foster appears to have conceded this point at trial, noting to the court—after its decision not to instruct the jury on voluntary intoxication—that without the instruction the defense can still argue that because of Mr. Gravitt's intoxication, there is "reasonable doubt as to his intent." Jury Trial Transcripts, Vol. IV, p. 5:20–25, 3:18–21.

the jury on voluntary intoxication at trial. *Id.* These two findings are not inconsistent.

As discussed at length above, there was evidence presented at trial to support the trial court's decision not to instruct on voluntary intoxication. Regarding the post-conviction hearing discussed by Mr. Gravitt, there, the trial court was evaluating Mr. Foster's basis for not hiring an expert to testify on the issue of Mr. Gravitt's level of intoxication. *See* Doc. No. 1-11. Under the standards used to evaluate such a pre-trial decision, the court was required to evaluate Mr. Foster's perspective at the time of the decision, without hindsight as a guide to reasonableness. *See* Doc. No. 1-11, p. 153:14–22 (quoting OCCA case law based upon *Strickland*, 466 U.S. at 689). After hearing Mr. Foster's rationale for not hiring an expert—which included Mr. Foster's confidence in the existing evidence, and certain budgetary concerns, Doc. No. 7-11, pp. 106:1–107:24; Doc. No. 1-11, pp. 113:15–24, 133:19–24, 114:10–19—the trial court appropriately determined that it was reasonable for Mr. Foster to believe and expect, before the trial commenced, that the court would instruct the jury on voluntary intoxication, even without expert testimony on the issue. Moreover, in stating its finding, the court emphasized that Mr. Foster's expectation before trial was not held by the court, but that it was reasonable, "from his perspective at the time of the trial." Doc. No. 1-11, p. 154.

Next, Mr. Gravitt argues that the OCCA misapplied *Turrentine v. State*, 965 P.2d, 955, 969 (Okla. Crim. App. 1998) on direct appeal.[7] Judge Erwin expressly and correctly

---

[7] As relevant to Mr. Gravitt's case, in *Turrentine*, the OCCA held that the trial court's failure to instruct the jury on voluntary intoxication was not error. 965 P.2d at 968–69. Specifically, after listing the trial evidence regarding the defendant's intoxication, the OCCA found that the instruction was not required because the defendant "was in control of his mental faculties and was not in the advanced state of intoxication he attempt[ed] to assert." *Id.* at 969.

rejected this argument, *see* Doc. No. 20, pp. 11–12. To the extent Mr. Gravitt argues that the facts of his case are distinguishable from *Turrentine*, the factual disparity between the cases is irrelevant, the OCCA having cited the case for a legal conclusion. *See* Doc. No. 1-3, p. 3. Furthermore, the issue of state law is irrelevant where, as here, the Court must focus on "clearly established *Federal law*, as determined by the Supreme Court of the United States." *Grant*, 886 F.3d at 948 n.25.

Mr. Gravitt also argues that the OCCA unreasonably applied *Thornburg v. Mullin*, 422 F.3d 1113, 1126 (10th Cir. 2005) and *Taylor v. Workman*, 554 F.3d 879, 893-94 (10th Cir. 2009).[8] Doc. No. 29, pp. 16–18, 19. Consistent with the above, Tenth Circuit case law "is not the measuring stick under AEDPA for assessing whether the OCCA acted unreasonably in resolving . . . [this] claim." *Grant*, 886 F.3d at 944. Mr. Gravitt is therefore not entitled to relief based upon his argument that the OCCA unreasonably applied Tenth Circuit law. *See Evans v. Ray*, 390 F.3d 1247, 1252 n.3 (10th Cir. 2004).

To be sure, the Court does "often look for guidance in the Tenth Circuit's interpretation of Supreme Court cases." *Id.* In that regard, reliance on *Thornburg* is entirely appropriate. Mr. Gravitt contends that *Thornburg* is irrelevant because the petitioner in *Thornburg* admitted his intent to commit the crimes he was charged with whereas Mr. Gravitt did not. Doc. No. 29, pp. 16–18; Doc. No. 44, pp. 11–12. Additionally, Mr. Gravitt submits that the petitioner in *Thornburg* had a stronger alibi defense that made it acceptable

---

[8] Mr. Gravitt complains that Judge Erwin did not discuss *Taylor v. Workman*, 554 F.3d 879 (10th Cir. 2009), which he argues is directly on point. Doc. No. 29, pp. 19–20. Judge Erwin is not required to consider each case cited by Mr. Gravitt in assessing whether, under the facts of this unique case, the denial of instructions on voluntary intoxication rendered Mr. Gravitt's trial fundamentally unfair.

for the trial court to deny an instruction on voluntary intoxication. Doc. No. 44, pp. 10–11. But the Tenth Circuit's holding in *Thornburg* was not that the trial court was excused from issuing a jury instruction on voluntary intoxication because the petitioner had admitted his intent to commit the crime. Nor was the Circuit's holding based upon the presence of the petitioner's alibi defense. Rather, the Tenth Circuit concluded that the trial court's failure to instruct the jury on voluntary intoxication did not render the trial fundamentally unfair because the instructions, as a whole, enabled the jury to give effect to the petitioner's intoxication defense. *See Thornburg*, 422 F.3d at 1126. As discussed previously, the same rationale applies here.

Mr. Gravitt continues in his objection, arguing that Judge Erwin failed to consider his contention that the prosecutor's closing argument, and a "verbal instruction" given by the trial court during voir dire, exacerbated the trial court's failure to give a voluntary intoxication instruction and affected the outcome of his trial. Doc. No. 29, pp. 18–22. Specifically, Mr. Gravitt contends the "jury had no idea they could consider 'voluntary' intoxication as a valid defense under Oklahoma law" because of (1) the trial judge's verbal instruction to the jury, wherein he allegedly explained the definition of intent by stating: "if you throw the ball . . . you meant to throw the ball" and (2) the prosecutor's closing argument that Mr. Gravitt intended to kill the officer he shot at because "he pointed . . . the gun[] in [the officer's] direction." Doc. No. 29, pp. 18–19.

As Mr. Gravitt highlights, Judge Erwin did not address this argument in his Report and Recommendation. Respondent argues that Judge Erwin likely did not notice the argument. Specifically, Respondent contends the argument was not fully raised or

expounded upon in Mr. Gravitt's petition to the Court, or in his appeal to the OCCA, and that the argument is thus unexhausted, subject to an anticipatory bar, and improper to consider on federal habeas review. Doc. No. 30, p. 8. Mr. Gravitt contends that it was raised to the OCCA on direct appeal and cites page 19 of his brief on direct appeal as evidence. Doc. No. 44, pp. 7–8.

"A state prisoner generally must exhaust available state-court remedies before a federal court can consider a habeas corpus petition." *Grant*, 886 F.3d at 890. "Exhaustion requires that the claim be 'fairly presented' to the state court, which 'means that the petitioner has raised the "substance"' of the federal claim in state court.'" *Id*. "[T]he crucial inquiry is whether the substance of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." *Id.* It is not enough for a petitioner to cite relevant legal principles without the relevant facts. *Id.* at 891. In that regard, "the assertion of a general claim before the state court is insufficient to exhaust a more specific claim asserted for habeas relief." *Id.*

The portion of Mr. Gravitt's direct-appeal brief cited above consists of Mr. Gravitt's factual recitation of the State's argument at trial. *See* Doc. No. 7-2, p. 19. That factual recitation was not couched within a larger argument that the trial judge and prosecutor's statements exacerbated the trial court's failure to give a voluntary-intoxication instruction or otherwise constitute reversable error, as argued in Mr. Gravitt's objection now before the Court. Doc. No. 29, pp. 18–19. Rather, it was used as supposed proof that the State failed at trial to factually disprove the defense of voluntary intoxication beyond a reasonable doubt. Doc. No. 7-2, pp. 18–19.

16

Moreover, in the portion of Mr. Gravitt's direct-appeal brief that corresponds with his first ground for post-conviction relief, Mr. Gravitt does not argue that the trial judge's comments at voir dire, or the prosecutor's closing arguments exacerbated the trial court's failure to give a voluntary-intoxication instruction. *See* Doc. No. 7-2, pp. 10–15. The Court agrees with Respondent that Mr. Gravitt did not fairly present the issue to the OCCA. Accordingly, Mr. Gravitt's argument concerning those comments and closing arguments is unexhausted. The Court will therefore not consider the merits of the issue.[9]

Additionally, the claim that statements made by the trial judge and prosecutor resulted in reversable error is subject to an anticipatory procedural bar. If Mr. Gravitt "attempted to pursue this . . . claim in state court, that court would deem the claim procedurally barred under Oklahoma law because [Mr. Gravitt] could have raised it on direct appeal." *Grant*, 886 F.3d at 901; *see Anderson v. Sirmons,* 476 F.3d 1131, 1139–40 n. 7 (10th Cir. 2007) ("'Anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." (internal quotation marks omitted)).[10]

---

[9] The Court will also not consider the merits of Mr. Gravitt's citation to and argument regarding *Taylor v. Workman*, 554 F.3d 879 (10th Cir. 2009), Doc. No. 29, pp. 19–20. As noted above, Judge Erwin did not err in failing to specifically discuss *Taylor* in his Report and Recommendation. Moreover, Mr. Gravitt's attempt to compare his case to *Taylor* is based upon his unexhausted argument regarding the trial judge's comments at voir dire and the prosecutor's closing arguments. *Id.*

[10] "Under Oklahoma's Uniform Post-Conviction Procedure Act, 'only claims which '[w]ere not and could not have been raised' on direct appeal will be considered [in post-conviction proceedings]." *Grant*, 886 F.3d at 901 (citing *Conover v. State*, 942 P.2d 229, 230–31 (Okla. Crim. App. 1997). To the extent petitioner believes that Oklahoma's rule is not adequate, and thus not applicable here, he is wrong. *See Sherrill v. Hargett*, 184 F.3d 1172, 1175 (10th Cir. 1999) ("Oklahoma's procedural rule barring post-conviction relief for claims petitioner could have raised on direct appeal constitutes an independent and adequate ground barring review of petitioner's . . . claim.").

Finally, Mr. Gravitt argues in his objection that the trial court's failure to instruct was not harmless error. Doc. No. 29, pp. 20–22. Upon review, this final objection appears to be an amalgamation of a few of Mr. Gravitt's prior objections—which the Court has already addressed in detail. *See id.* The Court need not proceed with further examination.

## B.  Ground Two

As noted, Mr. Gravitt's second ground for relief is that he received ineffective assistance of appellate counsel because his appellate counsel failed to challenge the effectiveness of his trial counsel, Mr. Foster, regarding his decision not to seek an expert to testify about Mr. Gravitt's level of intoxication. Doc. No. 1, pp. 22–37. The trial court held an evidentiary hearing on this issue during post-conviction proceedings and concluded pursuant to *Strickland v. Washington*, that counsel's performance was not deficient. Doc. No. 1-11. Judge Erwin concludes in the Report and Recommendation that the OCCA's decision affirming the denial of post-conviction relief—wherein the OCCA found that Mr. Foster employed reasonable trial strategy in choosing not to retain an expert—was not contrary to or an unreasonable application of clearly established federal law. Doc. No. 20, p. 25. Mr. Gravitt objects, arguing that Judge Erwin failed to adequately address whether his trial and appellate counsel performed reasonable investigations to discover available expert testimony evidence. Doc. No. 29, p. 22. This objection is without merit.

A petitioner's § 2254 motion may be granted—and his conviction vacated—for ineffective assistance of counsel where defense counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. A petitioner alleging ineffective

assistance of counsel must meet two requirements before a Court can grant his motion and vacate his conviction. First, he must establish that defense counsel's performance was deficient—*i.e.*, that it "fell below an objective standard of reasonableness." *Id.* at 687–88. Judicial scrutiny of counsel's performance is, however, "highly deferential." *Id.* at 689. In that regard, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The petitioner bears the burden of overcoming that presumption. *United States v. Voigt*, 877 F.2d 1465, 1468 (10th Cir. 1989).

Second, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The Court "may address the performance and prejudice components in any order but need not address both if [the petitioner] fails to make a sufficient showing of one." *Fields v. Gibson*, 277 F.3d 1203, 1216 (10th Cir. 2002).

In the Report and Recommendation, Judge Erwin discusses at length whether Mr. Foster acted reasonably in not procuring expert testimony evidence on the issue of Mr. Gravitt's intoxication. Doc. No. 20, pp. 17–26. To be sure, Judge Erwin does not address the alleged ineffectiveness of Mr. Gravitt's appellate counsel. But, as Mr. Gravitt concedes, that issue need not be addressed in light of Judge Erwin's recommendation that Mr. Foster did not act unreasonably. *See* Doc. No. 29, p. 23 (agreeing that "disposition of the ineffective assistance of trial counsel claim will resolve the ineffective assistance of appellate counsel claim . . . ."); *see also Hooks v. Ward,* 184 F.3d 1206, 1221 (10th Cir.

1999) (noting that with a claim of ineffective assistance of appellate counsel for failure to raise an issue, courts "look to the merits of the omitted issue.").

To the extent Judge Erwin did not specifically discuss Mr. Gravitt's evidence on this issue, the Court will do so. In his objection, Mr. Gravitt copies and pastes a summary of the evidence and arguments from his petition and his reply that he asserts were not addressed by Judge Erwin. *See* Doc. No. 29, pp. 23–25. He also cites to the post-conviction hearing and argues that six specific comments by Mr. Foster must be considered when judging the decision not to obtain an expert for use at trial. Doc. No. 44, pp. 15–16.

Under the applicable federal law, as determined by the U.S. Supreme Court in *Strickland*, the Court's scrutiny of counsel's performance is, as noted above, highly deferential.

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf. Engle v. Isaac*, 456 U.S. 107, 133–134, 102 S.Ct. 1558, 1574–1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Strickland*, 466 U.S. at 689.

Mr. Gravitt's evidence and argument highlight the distorting effects of hindsight. The evidence he cites records Mr. Foster's understanding that it would have likely helped in defending the case had an expert been obtained to testify on the issue of Mr. Gravitt's intoxication. *See* Doc. No. 29, pp. 23–25; Doc. No. 44, pp. 15–16. Mr. Foster suggests that if he were to do it all over again, he would hire an expert. Doc. No. 1-11, p. 111:16–17.

However, in the post-conviction hearing, Mr. Foster confirmed that this understanding was based on "hindsight being 20/20." Doc. No. 1-11, p. 113:15–24. Mr. Foster testified that, at the time of trial, he did a "significant amount of research" on the effects of taking certain drugs, *see* Doc. No. 1-11, p. 112:8–17, and even considered consulting with an expert on the issue of Mr. Gravitt's intoxication, *see* Doc. No. 7-11, p. 106:21–22. But he ultimately chose not to hire an expert due to a "limited budget" and because he believed the other available evidence was enough to pursue the defense of voluntary intoxication. Doc. No. 7-11, pp. 106:1–107:24[11]; Doc. No. 1-11, pp. 113:15–24, 133:19–24, 114:10–19.

Consistent with the above, at the time of Mr. Gravitt's trial, it was not a requirement that counsel obtain expert testimony evidence when putting on a voluntary intoxication defense. *See Jackson v. State*, 964 P.2d 875, 892 (Okla. Crim. App. 1998) (noting that the evidence for a voluntary intoxication defense "may come from any source . . ."). In fact, Mr. Foster testified at the post-conviction hearing that he had obtained voluntary-intoxication instructions in cases where he had not utilized an expert. Doc. No. 7-11, p. 106:17–20. Based on the foregoing, the Court agrees with Judge Erwin's assessment that the OCCA's determination—that Mr. Foster employed reasonable trial strategy in choosing not to retain an expert—was not contrary to, nor an unreasonable application of *Strickland*. *See* Doc. No. 20, p. 25 (citing *Gomez v. Lind*, 743 F. App'x 174, 180 (10th Cir. 2008) and *Knapp v. Janecka*, 337 F. App'x 766, 770 (10th Cir. 2009)).

---

[11] The CM/ECF pagination for this citation is Doc. No. 7-11, pp. 167–168.

Mr. Gravitt also objects to Judge Erwin's reliance on the above-mentioned cases—*Gomez v. Lind*, 743 F. App'x 174, 180 (10th Cir. 2008), and *Knapp v. Janecka*, 337 F. App'x 766, 770 (10th Cir. 2009). Doc. No. 29, pp. 26–28. Petitioner argues that the cases are not relevant because they are factually distinguishable from his case. *Id.* The Court disagrees. Moreover, as discussed previously, Tenth Circuit case law "is not the measuring stick under AEDPA . . . ." *Grant*, 886 F.3d at 944.

In *Gomez*, the petitioner alleged on habeas review that his trial counsel was ineffective for failing to present expert testimony on his level of intoxication. *Gomez*, 743 F. App'x at 180. The Tenth Circuit rejected the claim, finding that "trial counsel made an informed decision to pursue a particular trial strategy and, in any event, evidence of [Gomez's] intoxication was presented to the jury through his own testimony and by admission of medical records." *Id.* Mr. Gravitt contends that *Gomez* is not relevant because Gomez's trial counsel introduced medical records showing Gomez's acute intoxication, whereas Mr. Gravitt's trial counsel, Mr. Foster, did not. Doc. No. 29, pp. 26–27. In making such an assertion, Mr. Gravitt ignores the purported evidence of intoxication elicited by Mr. Foster at trial.

> The evidence included Gravitt's testimony as to his ingestion of large amounts of heroin and Xanax shortly before the offenses were committed; his inability to remember anything that happened that night; the testimony of Gravitt's girlfriend as to the large quantities of drugs she and Gravitt consumed that night; testimony from two Walgreen's employees as to Gravitt's strange behavior and their belief that he was intoxicated; Officer Duncan's testimony that he believed Gravitt was "on something" and that he had a crazed look in his eyes when he fired the gun at Duncan three times; and the video interview of Gravitt following his arrest where he had difficulty staying awake, difficulty recalling the details of that night and his speech was noticeably slurred.

Doc. No. 7-10, p. 7. By choosing not to hire an expert witness, Mr. Foster "made an informed decision to pursue a particular trial strategy and, in any event, evidence of [Mr. Gravitt's] intoxication was presented to the jury through his own testimony", the testimony of others, and the admission of other evidence from the night of his arrest. *See Gomez*, 743 F. App'x at 180. That Mr. Foster did not also offer medical records, as the trial counsel did in *Gomez*, does not render the Tenth Circuit's decision irrelevant.

In *Knapp*, the Tenth Circuit similarly concluded that trial counsel reasonably decided against presenting an expert in support of Knapp's intoxication defense where, as here and in *Gomez*, the jury would otherwise hear evidence regarding Knapp's intoxication. *Knapp*, 337 F. App'x at 770. Mr. Gravitt submits that this case is not relevant because Knapp did receive a jury instruction on voluntary intoxication, whereas he did not. Doc. No. 29, p. 27. This argument is without merit. As mentioned previously, "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. Accordingly, counsel's challenged conduct must be evaluated "from counsel's perspective at the time" he made the decision not to hire an expert. *See id.* As discussed at length above, the Court agrees with Judge Erwin's assessment that Mr. Gravitt did not act unreasonably at the time he made the decision not to hire an expert, and that the OCCA's determination of the same was not contrary to, or an unreasonable application of, *Strickland*.

In his final objection to Judge Erwin's analysis of ground two, Mr. Gravitt argues that his trial counsel's error was prejudicial. Doc. No. 32–34. But neither the OCCA, nor

Judge Erwin addressed the prejudice prong in their *Strickland* analysis. *See* Doc. No. 20, pp. 17–26. They both concluded that Mr. Gravitt's trial counsel claim lacked merit because counsel made a reasonable strategic decision not to employ an expert. Doc. 7-10, pp. 4–10; Doc. 29, pp. 25–26. Thus, Mr. Gravitt's objection regarding *Strickland*'s prejudice prong is irrelevant; it does nothing to undermine the reasoning of the OCCA or Judge Erwin's Report and Recommendation. *See Cooks v. Ward*, 165 F.3d 1283, 1292–93 (10th Cir. 1998) (noting that when a court evaluates an ineffective assistance of counsel claim, it "may address the performance and prejudice components in any order, but need not address both if [petitioner] fails to make a sufficient showing of one.").

### C. Ground Three

The final ground of the Petition alleges cumulative error. Doc. No. 1, pp. 37–38. On objection Mr. Gravitt argues that Judge Erwin should have found cumulative error because there was "Constitutional Error on both Grounds One and Two." Doc. No. 29, p. 34. As demonstrated above, Mr. Gravitt's objections regarding the disposition of his first and second grounds for relief lack merit. There is thus no constitutional error to cumulate. *See Cuesta-Rodriguez v. Carpenter*, 916 F.3d 885, 915 (10th Cir. 2019), *cert. denied*, 140 S. Ct. 844 (2020) ("The cumulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors." (quoting *Smith v. Duckworth*, 824 F.3d 1233, 1255 (10th Cir. 2016)).

### V.    Conclusion

For the foregoing reasons, the Court adopts the Report and Recommendation, Doc. No. 20, to the extent it is consistent with the Court's order. The Court hereby denies the

Petition for Writ of Habaes Corpus, Doc. No. 1, filed by Petitioner Jared Gravitt pursuant to 28 U.S.C. § 2254. Judgment shall be entered accordingly.

Under Rule 11 of the Rules Governing Section 2254 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, a petitioner must show "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons stated herein, the Court finds that Mr. Gravitt has not satisfied this standard. The Court denies a certificate of appealability as to its ruling on Mr. Gravitt's § 2254 petition.

**IT IS SO ORDERED** this 9th day of September 2020.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE